

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| CLYDE MCARTHUR, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:13-cv-02042-LSC |
| | ) | |
| UNUM LIFE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Memorandum of Opinion

Plaintiff Clyde McArthur ("McArthur") brought this action under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") to recover benefits under a long-term disability plan ("Plan") underwritten by Defendant Unum Life Insurance Company of America ("Unum"). Before this Court is Unum's motion for summary judgment (Doc. 11), which argues that the Plan's limitations period makes McArthur's claim untimely. Also before this Court is McArthur's motion to compel discovery (Doc. 15) and motion to file a sur-reply brief (Doc. 22). The issues have been fully briefed and are ripe for review. For the reasons discussed below, Unum's motion for summary judgment is due to be granted.

McArthur's motion to file a sur-reply brief is due to be granted, and the Court considered the contents of McArthur's sur-reply brief in reaching this decision. McArthur's motion to compel discovery is due to be denied as moot.

## I.    Background

McArthur was employed by Home Federal Holdings Corporation ("Home Federal") as President and Chief Executive Officer. As an employee of Home Federal, McArthur participated in a long-term disability plan underwritten by Unum and subject to the requirements of ERISA. Starting in 2004, McArthur underwent a series of back surgeries. McArthur was eventually diagnosed with lumbar radiculitis, a condition that McArthur has stated caused him "[c]onstant pain [that] impairs [the] ability to work, think, prepare myself for work, remain alert, [and] complete basic duties." (Doc. 14 at 3.) According to McArthur's doctors, the condition also left McArthur unable to stand for more than ten minutes at a time and limited his ability to lift objects weighing more than 10 pounds. (Doc. 13-2 at 5.)

In February 2009, McArthur filed a claim for disability benefits. McArthur stopped working at Home Federal on April 30, 2009. (*Id*. at 8.) On September 2, 2009, Unum denied McArthur's claim, citing insufficient medical records to determine whether McArthur qualified for benefits. (*See id*. at 21.) McArthur

appealed Unum's denial and submitted additional medical records in an effort to establish that his condition warranted payment of disability benefits.

On November 20, 2009, Unum sent another letter to McArthur. This letter informed McArthur that Unum had affirmed its previous denial of benefits, and that McArthur had a right to bring a civil suit under § 502 of ERISA challenging the denial. The denial letter also informed McArthur that he was entitled to request from Unum "copies of all documents, records or other information that are relevant to your benefit determination," and that "no further review" of the denial was available from Unum's claims administration department. (*Id*. at 34.) On September 10, 2013, McArthur requested all records relating to denial of his benefits claim. In response, Unum provided McArthur with a copy of his claim file and referred him to the Plan's official administrator, Georgia Banker's Association Insurance Trust, Inc.,[1] to obtain copies of the primary Plan documents. McArthur filed the present action on November 7, 2013.

The Plan is made up primarily of two documents: the long-term disability policy ("Policy") and the summary plan description ("SPD").[2] Both the Policy and the SPD

---

[1] While the Banker's Association is designated the "Plan Administrator," Unum was the claims administrator, and thus had exclusive control over the determination of claims.

[2] The parties dispute whether the two documents at issue—Document 36133-001 and Document 36133-021—are in fact a separate policy and summary. McArthur points out that there

set limitations on when a claimant can bring a civil suit, stating that a claimant may "start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided by federal law." (*See* Doc. 13-1 at 14, 61.) Both the Policy and the SPD state that a claimant must submit proof of claim within ninety days of the end of the claimant's "elimination period." As defined in the Plan documents, a claimant's elimination period is "a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum." (*See id*. at 36, 84.) While the Policy does not specify the length of the elimination period, the SPD states that the elimination period is ninety days, meaning that the Plan's limitation on filing a civil suit would begin to run roughly three months after McArthur had been disabled for ninety consecutive days. Finally, both the SPD and the Policy state that "[t]he summary plan description and policy constitute the Plan." (*See id*. at 40, 89.)

---

are similarities and ambiguities, with the one major difference being that Document 36133-001 does not define the length of the elimination period. For the sake of clarity, this Court will refer to Document 36133-001 as the Policy and Document 36133-021 as the SPD. This does not mean that the Court endorses Unum's view that Documents 36133-001 and 36133-021 contain no redundances or ambiguities. However, for the reasons set out below, this Court is not persuaded that ambiguities between the two documents justify invalidating the agreed-upon limitations period, even when making all inferences in favor of McArthur. Also, because McArthur asserts that he was not afforded an opportunity to depose either witness submitting affidavits in support of Unum's position concerning the roles of Document 36133-001 (the Policy) and Document 36133-021 (the alleged SPD), the Court does not consider these clarifying affidavits in making its decision.

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249, 106 S. Ct. at 2511.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). In making a motion for summary judgment, "the

moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id*. Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

## III.   Discussion

### A. Validity of the Plan's Three-Year Limitations Provision

Unum asserts that the Plan's limitations period bars McArthur from bringing an ERISA § 502(a)(1)(B) claim for wrongful denial of benefits. ERISA does not specify a statute of limitations for § 502 actions. *See* 29 U.S.C. § 1001 *et seq*. (2012); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013). Thus, courts typically "borrow the most closely analogous state limitations period," which is usually the relevant state's statute of limitations for contract actions. *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998).

However, courts need not consider state statutes of limitation when the parties have specified the time frame that a claimant has for bringing a civil suit. *See id*. at

1301–03. A contractual provision limiting the period during which a claimant may sue is valid so long as (1) the provision gives the claimant a "reasonable" amount of time to bring suit, and (2) there is no controlling statute that requires a claimant be given more time to bring legal action than the plan's limitations provision allows. *See Heimeshoff*, 134 S. Ct. at 610 (stating that "[a]bsent a controlling statute to the contrary, a participant and plan may agree by contract to a particular limitations period . . . as long as the period is reasonable").

While the parties do not dispute the reasonableness of the three-year limitations provision, McArthur does assert that there is a controlling statute that is "less restrictive." Specifically, McArthur points to §§ 33-29-3(b)(7) and (b)(11) of the Georgia Insurance Code. *See* Ga. Code Ann. §§ 33-29-3(b)(7) and (b)(11) (2014). Chapter 29 of the Code bears the heading "Individual Accident and Sickness Insurance," and § 33-29-3(b)(11) states that:

> No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

This minimum statutory restriction, standing alone, is identical to the limitations provision in the Plan at issue. However, McArthur argues that another provision,

§ 33-29-3(b)(7), requires that he be given more time to submit his proof of claim, and

that the limitations period for bringing legal action must therefore begin later than the

Plan's limitation provision currently allows. Section 33-29-3(b)(7) states that:

> Written proof of loss must be furnished . . . in the case of a claim for loss
> for which this policy provides any periodic payment contingent upon
> continuing loss, within 90 days after the termination of the period for
> which the insurer is liable and, in the case of claim for any other loss,
> within 90 days after the date of such loss.

Of particular importance is the phrase "termination of the period for which the

insurer is liable." McArthur argues that "the period for which the insurer is liable"

lasts as long as the claimant's disability, thus giving McArthur significantly more time

to file proof of claim than what the Plan currently allows. Because this inconsistency

would make the Plan's agreed-upon limitations period more restrictive than that of the

Georgia Insurance Code, McArthur insists that the Court must declare the limitations

provision invalid and instead apply the most analogous state limitations period, which

is Georgia's six-year limitations period for contract claims.

Reviewing these arguments, this Court finds that §§ 33-29-3(b)(7) is not a

"controlling statute" for the purposes of *Heimeshoff*. First, Chapter 29 of the Georgia

Insurance Code does not apply to the Plan. As the statutory heading makes clear,

Chapter 29 of the Georgia Insurance Code applies only to *individual* disability policies,

while the Plan under dispute is a group disability policy. The relevant code chapter for group long-term disability policies under the Georgia Insurance Code is Chapter 30, which this Court will address shortly.[3]

Furthermore, even assuming that Chapter 29 of Georgia's Insurance Code is a "controlling statute," this Court is not convinced that the Plan's limitations period is more restrictive than the period found in Ga. Code Ann. §§ 33-29-3(b)(7) and (b)(11). Other courts have considered language similar to that which McArthur cites in § 33-29-3(b)(7), and have decided that the "period for which the insurer is liable" is the interval between a plan's scheduled benefit payments rather than the total period that an insurer may potentially be liable for payment. *See Kirkland v. Guardian Life Ins. Co. of Am.*, No. 3:06-cv-107, 2008 WL 1990340, at *10–11 (M.D. Ga. May 5, 2008). In *Kirkland*, the district court interpreted similar language found in a disability policy. The policy stated that a claimant had "90 days after the end of the period for which [the insurance company] is liable" to submit proof of claim. *Id*. at *10. The plaintiff argued that "the period for which the insurance company is liable" should be interpreted to mean the duration of the claimant's disability, meaning that the

---

[3] McArthur also cites Ga. Code Ann. § 33-30-11, which states that "except as otherwise provided in this chapter, no policy of group . . . insurance shall contain any provision relative to . . . the time within which an action may be brought . . . which is less favorable [than the requirements of Chapter 29]." However, another section of Chapter 30, § 33-30-6, does "provide otherwise," and thus § 33-30-11 does not make Chapter 29′s limitations applicable here.

period could not expire so long as the plaintiff continued to suffer from a disability.

However, the district court found this interpretation to be "unreasonable as a matter of law." *Id*. The court emphasized that, by extending indefinitely the period a claimant has for submitting proof of loss, the plaintiff's proposed interpretation would make it impossible for the defendant insurance company to evaluate potential claims in a timely manner. *See id*. (stating that "[u]nder Plaintiff's interpretation, [the defendant] would be prevented, perhaps for decades, from evaluating claims for which it might be liable," and adding that such a construction would not be "consistent with the purpose of a proof of loss provision"). Consequently, the court decided that "the period for which the insurer is liable" should be interpreted in this context to mean the interval established for payment of benefits under the plan.[4] The Eleventh Circuit considered this issue, albeit in an unpublished opinion, and decided that the district court appeared to have "correctly construed" the language at issue. *See Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293, 300 n.1 (11th Cir. 2009).

Furthermore, the Plan's limitations provision does not offend a "controlling statute" even when weighed against the requirements of the applicable sections of the Georgia Insurance Code, §§ 33-30-6(b)(4)&(b)(7), which do apply to group long-term

---

[4] In *Kirkland*, this period was thirty days, meaning that the claimant had ninety days following the one-month period that the plaintiff first claimed benefits under the policy. *See id*. at 11.

disability plans like the one at issue.[5] Section 33-30-6(b)(4) states that claimants must furnish proof of loss "within 30 days after the commencement of the period for which the insurer is liable." The Plan on the other hand does not require McArthur to submit proof of claim until ninety days after his ninety-day elimination period, thus delaying the beginning of the Plan's limitations period for longer than what is required under § 33-30-6(b)(7).

Finally, the Court notes that, even if it were to mark the beginning of the Plan's limitations period as coinciding with Unum's final denial of benefits (the last event in the administrative record), McArthur's claim would still be untimely. The Eleventh Circuit has suggested in an unpublished opinion that agreed-upon limitations periods begin, at the latest, upon an insurance company's final denial of benefits to a claimant. *See Johnson v. Unum Provident*, 363 F. App'x 1, 3 (11th Cir. 2009) (reviewing a grant of summary judgment in an ERISA case also containing a three-year agreed-upon limitations period, and deciding that the provision would have barred plaintiff's § 502 action no later than three years after the action accrued following the insurance company's final determination of the plaintiff's disability claim).

---

[5] Section 33-30-6(b)(7) lists the same requirements as § 33-29-3(b)(11). Since this Court has already established that the Plan's limitations provision meets the statutory requirements of § 33-29-3(b)(11), it will not reexamine the language.

In this case, McArthur received notice that his appeal had been denied on November 20, 2009. The letter further notified McArthur that he could bring a civil suit under § 502 of ERISA and that "no further review" was available directly from Unum. Yet McArthur waited almost four years to bring this action. Thus, McArthur's claim would still be untimely even if the three-year limitations period did not start until McArthur's § 502 claim accrued following his exhaustion of Unum's appeals process.

Because of the reasons stated above, this Court determines that the Plan's three-year limitations provision does not offend a "controlling statute." This Court will next address whether ambiguities within the Plan documents invalidate the Plan's three-year limitations provision.

## B.     Ambiguity within the Plan

McArthur also argues that, even if the Court determines that the three-year limitations provision is valid, further discovery is needed to clarify ambiguities within the Plan. Specifically, McArthur argues that the Policy's absence of a duration term for the elimination period makes it so that McArthur could not be fairly be expected to calculate when the Plan's contractual limitations period would expire.

There are multiple reasons why this argument must fail. First, as has already been stated, the Eleventh Circuit has suggested that contractual limitations provisions begin no later than when a claimant's § 502 action accrues under ERISA. *See Johnson*, 363 F. App'x at 3. Thus, any ambiguity in the Plan documents was made irrelevant once three years passed from the date Unum issued a final denial of benefits and informed McArthur of his right to bring a civil suit.

Furthermore, the primary purpose of an "elimination period" counsels against finding it a reasonable source of ambiguity here. The Plan defines "elimination period" as "a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum." (Doc. 13-1 at 36, 84.) This definition, found in both the Policy and the SPD, makes clear that an elimination period is the period between when a claimant's disability begins and when benefits start to be paid. Elimination periods exist primarily to cut insurance companies' administrative costs by excluding injuries that resolve themselves within the defined period. *See* Steven Plitt et al., 12 *Couch on Insurance* § 182:10 (3d ed. 2014) (stating that "[e]limination periods serve much the same purpose as deductibles in property insurance—keeping insurer costs and insureds' premiums down by excluding costs associated with small losses"). Because this is their primary purpose, elimination periods largely become

irrelevant once an insurance company has rendered a final denial of a claim. Consequently, litigation over the duration of a limitations-triggering elimination period usually occurs only when the defendant insurance company asserts that the limitations period began to run before the plaintiff's § 502 action accrued. *See, e.g.*, *White v. Worthington Indus., Inc. Long Term Disability Income Plan*, 266 F.R.D. 178, 194 (S.D. Ohio 2010) (stating that the plaintiff's § 502 claim was not brought within three years of the date that the plan required proof of loss or the date of final denial, and "[t]herefore, the [§ 502] claim is time-barred"). Stated simply, once Unum denied disability benefits for its stated reason, the existence of the elimination period was irrelevant. Such period would have passed by this point in time.

Also, there is no evidence on record indicating that the ambiguities in the Plan documents contributed to McArthur's nearly four-year delay in bringing this action. Courts in similar cases have decided that a claimant cannot assert ignorance of the workings of a three-year limitations provision when the plaintiff waited more than three years after accrual of a § 502 action to file suit or request the plan documents at issue. *See Wilson v. Standard Ins. Co.*, No. 4:11-cv-02703, 2014 WL 358722 (N.D. Ala. Jan. 31, 2014). In *Wilson*, the defendant insurance company sought summary judgment on the basis that a three-year limitations provision barred the plaintiff's § 502 claim

for denial of benefits. The plaintiff argued that the statute should be tolled since she had never been informed of the existence of the limitations provision or when it would expire. *Id.* at *8–9. However the court refused to entertain this argument, and noted that the defendant informed the plaintiff that she had a right to request "all documents, records, and other information relevant to your [long-term disability] claim." *Id.* at *8; *see also id.* at n.11 (stating that "[e]ven if the Court gives [the plaintiff] every benefit of the doubt and uses [when plaintiff's § 502 cause of action accrued] as the trigger date for the three-year limitations period, that period expired before [the plaintiff] filed her lawsuit").

While *Wilson* is the only case discussed by the parties in briefing, it is by no means an outlier, as other courts have decided that a plaintiff may not cite discrepancies between plan documents as justification for delay in filing suit when there is no evidence that the plaintiff relied on those discrepancies when determining when to file. *See, e.g.*, *Shealy v. Unum Life Ins. Co. of Am.* 979 F. Supp. 395, 399–400 (D. S.C. 1997) (stating that "plaintiff could not be misled into a late filing by a document which she did not receive until many months after the deadline for filing had passed").

McArthur now argues that he had no means of knowing when the limitations provision would expire since only the SPD defined the length of the elimination period. McArthur makes this argument despite the fact that Unum informed McArthur that he had a right to "copies of all documents, records, and other information that are relevant to your benefit determination," and McArthur failed to request this information or otherwise pursue a civil lawsuit until after the three-year limitations provision expired. McArthur produces no evidence showing he relied on the ambiguous elimination period at issue to determine when to file his suit. In fact, it is undisputed that McArthur did not seek copies of the Policy and SPD from Unum until nearly four years following final denial of his claim. Furthermore, McArthur's claimant statement includes a reference to "Policy Number 36133-021," which is the SPD. This claimant statement is filled in by hand and signed by McArthur on February 4, 2009. (*See* Doc. 13-2 at 7). Thus, this Court is not convinced that the alleged ambiguities in the Plan documents—specifically the ambiguity concerning the duration of the elimination period—caused McArthur any delay.

In addition, both the SPD and the Policy contain a provision stating that "[t]he summary plan description and the policy constitute the Plan."[6] Other courts have

---

[6] As McArthur notes, the incorporation provision could be better drafted, as both documents state that "these provisions, together with your certificate of coverage, constitute the summary plan

decided that such provisions incorporate into the Plan those terms found only in summary plan description. *See Young v. United Parcel Servs., Inc. Employees' Short Term Disability Plan*, 416 F. App'x 734, 737–39 (10th Cir. 2011) (holding that a plan provision stating that "[t]he summary plan description and [summaries of material modifications] . . . are hereby incorporated by reference and constitute a part of the Plan" acted to incorporate into the plan a limitations provision found only in the summary plan description). Furthermore, the SPD provision at issue in this case does not truly conflict with any provision in the Policy, since the Policy itself does not define the length of the elimination period. Finally, McArthur's argument that the Policy is intended to amend and replace the SPD overlooks the fact that both documents are identically dated, as the first page of both documents is dated March 13, 2007. (*See* Doc. 13-1 at 5, 48.)

The ambiguities McArthur cites between the disputed SPD and the Policy do not invalidate the Plan's three-year limitations provision. This issue can be decided based on the administrative record and existing law. Therefore, any further discovery is unnecessary and McArthur's motion to compel discovery is denied.

---

description." (Doc. 13-1 at 40, 89.)

**IV.    Conclusion**

For the reasons stated above, McArthur's motion to file a sur-reply brief (Doc. 22) is GRANTED, while McArthur's motion to compel discovery (Doc. 15) is DENIED as moot, and Unum's motion for summary judgment (Doc. 11) is GRANTED.

A separate Order will be entered.

Done this 4th day of <u>September 2014.</u>

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822